**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:13CV267-RJC-DSC**

| | |
|---|---|
| **KELLY R. MORRIS,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum in Support ..." (document #11), both filed August 30, 2013; and Defendant's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #13), both filed October 31, 2013. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On April 28, 2010, Plaintiff filed an application for a period of disability, Social Security

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on July 3, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging that he was unable to work as of February 17, 2001. (Tr. 191-203). Plaintiff later amended his onset date to April 28, 2010 (Tr. 42).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on June 14, 2010. (Tr. 37-74).

On August 8, 2012, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 24-32). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date. (Tr. 32). The ALJ also found that Plaintiff suffered from "a seizure disorder, status post right hip replacement with residuals, an amnesia disorder, a mood disorder, and an anxiety disorder," but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id. The ALJ found that Plaintiff's mental and emotional impairments resulted in "moderate" (that is, non-disabling) limitations in activities of daily living; "mild" limitations in social functioning; and "moderate" limitations in concentration, persistence, and pace. The ALJ found that Plaintiff had not experienced any extended episodes of decompensation. Id. The ALJ further found that Plaintiff's testimony regarding the severity of his impairments and resulting limitations was "not persuasive." Id.

The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform a range of light work,[3] limited to occasional climbing, balancing, crouching, or

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires

2

crawling; avoiding exposure to unprotected heights and moving machinery; and performing simple tasks. (Tr. 28-32). The ALJ concluded that Plaintiff could not perform his past relevant work. (Tr. 33).

Based upon this RFC and Plaintiff's age, education and work experience, the ALJ concluded that Medical-Vocational Rule 202.18 dictated a finding of not disabled at step five. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. Id.

Plaintiff filed a timely Request for Review by the Appeals Council. By notice dated March 7, 2013, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-3).

Plaintiff filed the present action on May 2, 2013. Plaintiff objects to the ALJ's reliance on the Medical-Vocational Guidelines ("the Grids") without any testimony from a Vocational Expert ("V.E."). Plaintiff also assigns error to the ALJ's formulation of his RFC and evaluation of his obesity. See Plaintiff's "Memorandum in Support ..." 1-2 (document #11).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The

---

a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time as that

4

term of art is defined for Social Security purposes.[4] Plaintiff contends that the ALJ erred by relying solely on the Grids in determining that he could perform work that exists in significant numbers in the national economy. Document #11 at 10-14.

Once a claimant demonstrates that he cannot perform his past relevant work, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commission may rely on the Grids if a claimant has no non-exertional impairments. Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). However, every non-exertional malady does not rise to the level of a non-exertional impairment. Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984). The Fourth Circuit stated in Smith that

> Although [Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983)] makes clear that reliance on the grids is precluded where the claimant suffers from a "non-exertional impairment," not every malady of a "non-exertional" nature rises to the level of a "non-exertional impairment." <u>The proper inquiry, under Grant, is whether a given non-exertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable</u>. If the condition has that effect, it is properly viewed as a "non-exertional impairment," thereby precluding reliance on the grids to determine a claimant's disability.

Id., 719 F.2d at 725 (emphasis added). Therefore, "reliance on the Grids is precluded only if the non-exertional condition in question is credibly found to affect the individual's RFC to perform work of which he is otherwise exertionally capable." Hedrick v. Colvin, No. 5:11-cv-113, 2013, WL 2434612, at *5 (W.D.N.C. June. 4, 2013).

The ALJ properly relied on the Grids since none of the limitations imposed upon

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

Plaintiff's RFC significantly affected his ability to perform light work. The ALJ found that Plaintiff could perform light work with the aforementioned limitations. (Tr. 28-32). Under the regulations, if a claimant has a limitation on climbing or balancing, "it would not ordinarily have a significant impact on the broad world of work." Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6. In addition, "a person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels." Id. at * 8. A limitation on crouching or crawling does not prevent an ALJ from using the Grids. See id. at *7 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact"); see also Carey v. Commissioner, Soc. Sec. Admin., SAG-12-3583, 2013 WL 4804734, at *2 (D. Md. Sept. 6, 2013) ("a limitation to occasional stooping, bending, kneeling, and crouching does not have a material effect on the [occupational] base.") Finally, this Court has held that a limitation to simple tasks does not prevent an ALJ from relying on the Grids. Scott v. Colvin, 1:12-cv-170, 2013 WL 3927607, at *6-7 (W.D.N.C. Jul. 29, 2013) (holding that an RFC finding of light work with limitation to simple tasks did not preclude an ALJ from using the Grids).

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence because (i) the ALJ failed to properly evaluate Plaintiff's mental limitations in violation of SSR 96-8p; (ii) the ALJ improperly found that Plaintiff was non-compliant with his prescribed medications; and (iii) the ALJ improperly discounted his use of a cane. Document #11 at 14-17. The undersigned finds that substantial evidence supports the ALJ's RFC finding.

While the ALJ is responsible for assessing the RFC, the claimant has the burden of proving his RFC. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (citing Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983)(claimant has the burden of production and proof through the fourth step of the sequential analysis); Plummer v. Astrue, No. 5:11cv6, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011), Mem. & Rec. adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012) (finding that "[t]he claimant bears the burden of providing evidence establishing the degree to which [his] impairments limit [his] RFC.").

Plaintiff argues that the ALJ's RFC finding regarding his mental impairments was erroneous. Plaintiff asserts that the ALJ only included a limitation to performing simple tasks, and did not make detailed findings about his abilities to respond appropriately to supervision, co-workers, and usual work situations, or to deal with changes in a routine work setting. Contrary to Plaintiff's assertions, SSR 96-8p does not require an ALJ to discuss every factor detailed in 20 C.F.R. §§ 404.1545(c), 416.945(c). See SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."); see also Adkins v. Astrue, 3:10-cv-60, 2010 WL 5825428, at * 4 (E.D. Va. Sept. 28, 2010) (holding that the ALJ's RFC analysis is not required to identify each of "the functions listed in 20 C.F.R. § 416.945, namely, understanding, remembering, and carrying out simple instructions, and responding appropriately to supervision, coworkers, and work pressure in a work setting.")

7

Plaintiff does not point to any evidence establishing that he had limitations in his ability to get along with his supervisors and co-workers, or to handle routine changes in the workplace. Rather, the evidence supports the ALJ's decision to exclude any such limitations. Plaintiff's mother reported that he had no problem getting along with family, friends and neighbors, got along well with authority figures, and was able to handle changes in his routine. (Tr. 254, 256). State agency consultative examiners Dr. Robert Abarmowitz and John K. Warken M.S. opined that Plaintiff had the capacity to interact appropriately with others. (Tr. 382). Those experts also opined that Plaintiff was able to understand, retain, and follow directions. (Tr. 383). Substantial evidence supports the ALJ's finding that Plaintiff's sole mental workplace limitation was a limitation to performing simple tasks.

Plaintiff also argues that the ALJ erred by not discussing his use of a cane as required by the regulations. Document #11 at 16. The ALJ did discuss Plaintiff's use of cane, but found that the medical records did not support his claim of severe difficulties with walking. (Tr. 28-29). The evidence supports this conclusion. Plaintiff underwent several physical examinations that did not detect any issues with his legs or standing. (Tr. 305, 324, 327, 353, 375, 411, 413, 424, 433). The record also indicates that Plaintiff had a normal gait. (Tr. 324, 327, 375, 411 413). An ALJ may discount the use of a cane where, as in this case, there is no evidence that it was prescribed by a physician. Chancy v. Astrue, No. 7:09 cv 44, 2010 WL 2165341, at *5 (E.D.N.C. Mar. 25, 2010) (upholding discounting of claimant's use of a cane where "there was no indication from the medical record that use of a cane was prescribed by a physician").

Plaintiff argues that the ALJ erred by concluding that he was non-complaint with his seizure medication. (Tr. 27-28). Substantial evidence supports this conclusion as well. In

January 2010, Plaintiff presented at the hospital complaining of seizures and was prescribed Dilantin. (Tr. 326). At a follow-up appointment on May 24, 2010, his neurologist Dr. Quanwei Zhang noted that Dilantin controlled Plaintiff's seizures. (Tr. 324). A symptom that can be reasonably controlled by medication or treatment is not disabling. See Gross v. Heckler, 785 F.2d 1163, 1165-1166 (4th Cir. 1986) (Appeals Council did not err in eliminating conditions that would respond to medical attention as evidence of disability).

Subsequent to that appointment, Plaintiff's blood work indicated that his Dilantin levels were below therapeutic levels from August 2010 through April 2011. (Tr. 333, 388, 396). This time period corresponds with an uptick in Plaintiff's seizures. (Tr. 374, 397, 410, 413). On May 25, 2011, Dr. Zhang increased Plaintiff's dosage of Dilantin. (Tr. 413). In September 2011, the increased dosage began showing positive effects. (Tr. 419). On October 18, 2011, upon presenting to the emergency room, Plaintiff stated that he did not take his Dilantin the night before, and only took the medication "fairly regularly recently." (Tr. 423). Plaintiff's Dilantin levels were well below the therapeutic level. (Tr. 426). The ALJ properly discounted Plaintiff's claims of disability resulting from his seizures. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"); Gross, 785 F.2d at 1166 ("[i]f a symptom can be reasonably controlled by . . . treatment, it is not disabling" ); Wyrick v. Apfel, 29 F.Supp.2d 693, 697-698 (M.D.N.C. 1998) (holding that ALJ properly considered Plaintiff's non-compliance and its detrimental effects on his impairments in assessing Plaintiff's RFC).

Finally, Plaintiff argues that the ALJ erred by not finding that his obesity was a severe

impairment and not considering how his obesity impacted his ability to work. Document #11 at 17-21. Pursuant to SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002), an ALJ is required to consider obesity throughout the sequential evaluation process. The ALJ stated that he considered Plaintiff's obesity pursuant to SSR 02-1p (Tr. 30). The ALJ also discussed Plaintiff's obesity in his RFC analysis. (Tr. 30). See Driver v. Astrue, No. SAG-10-2786, 2012 WL 748568, at *2 (D. Md. Mar. 5, 2012) (finding that ALJ's consideration of obesity in the RFC assessment rendered harmless any failure to discuss it in earlier severity assessment).

Plaintiff's treating medical providers never mentioned his obesity, discussed any limitations related to his obesity, or suggested that he needed to lose weight to alleviate any of his symptoms. Courts have found that a failure to discuss obesity is not cause for remand where no physician has assessed work related limitations resulting from that condition. See Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006) (finding no reversible error even though ALJ did not explicitly address plaintiff's obesity where no medical opinion identified plaintiff's obesity as contributing to her physical limitations); Rutherford v. Barnhart, 399 F.3d 546, 552-553 (3d Cir. 2005) (failing to consider obesity did not warrant remand where claimant did not show how obesity would affect outcome of the case and medical evidence did not identify limitations due to obesity); Forte v. Barnhart, 377 F.3d 892, 896-897 (8th Cir. 2004) (failing to discuss obesity was harmless error where no physician assessed work related limitations as a result thereof); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (failing to mention evidence of obesity did not require remand under SSR 00-3p and SSR 02-1p where ALJ adopted limitations suggested by physicians who were aware of claimant's obesity).

The non-examining state agency medical consultant reviewed the record, including notations of Plaintiff's weight, and opined that Plaintiff was limited to light work. (Tr. 11-120). See McKinney v. Astrue, No. 1:11cv199, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012) (holding that ALJ's failure to discuss Plaintiff's obesity was harmless because he adopted the conclusion of reviewing doctors who were aware of the obesity); see also Darby v. Colvin, No. 1:12-CV-00295, 2013 WL 4509662, at *5 (W.D.N.C. Aug. 23, 2013) ("Even assuming without deciding that Plaintiff can establish that the ALJ's decision is flawed . . . the alleged error, however, is not a reason for remand because it is merely a harmless error and Plaintiff has not articulated how she was harmed or prejudiced by the error.")

For those reasons, the ALJ's treatment of Plaintiff's obesity is supported by substantial evidence.

Although the medical records establish that Plaintiff experienced some degree of pain, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #12) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: November 12, 2013

David S. Cayer
United States Magistrate Judge